## KIRSCHNER v. KIRSCHNER.

No. 22934.   Oct. 2, 1934.

V. E. McInnis and C. A. Ambrister, for plaintiff in error.

Joseph C. Stone, Charles A. Moon, and Francis Stewart, for defendant in error.

RILEY, C. J.   This is an action to recover damages for personal injuries brought by defendant in error, Harry Kirschner, against his son, Morris Kirschner, plaintiff in error.   The parties will be referred to as in the trial court.

Plaintiff alleges, in substance, that on the 9th day of October. 1929, at the invitation or suggestion of defendant, plaintiff became the guest of defendant as a passenger in an automobile from Tulsa to Wewoka, through Okmulgee.   That said automobile was on said trip driven and operated by another son of plaintiff and brother of defendant as the agent of defendant; that while driving along a street or boulevard in the city of Okmulgee the driver of said automobile carelessly and negligently drove and operated said automobile in violation of the laws of the state of Oklahoma, in such a way that plaintiff, who was riding in the rear seat, was thrown with great force against the top of said automobile, whereby the skin and flesh were lacerated and cut to the bone, causing what is known as a cerebral concussion of the brain.   The particular acts of negligence

charged in the original petition were, operating said automobile at a dangerous and excessive speed along and over a street in said city, failure to observe a "slow sign" placed in said street in approaching a street crossing in which there was what is known as a "double dip" in the street along which the automobile was being driven, so that in crossing said double dip plaintiff was injured as above stated; that by reason of the injuries so received, plaintiff was confined to his bed for a period of about 15 days; that the injuries were permanent, rendering plaintiff unable to transact ordinary business, causing great pain and anguish, and that by reason of said injuries, "plaintiff's nervous system has been so shocked and disturbed that plaintiff is unable to transact his ordinary business, and because of said injuries plaintiff will never be able to transact ordinary business."

The petition was amended so as to allege that the acts of negligence resulting in the injury to plaintiff were in violation of certain sections of ordinance No. 628 of the city of Okmulgee, which sections were set out in full in the amendment.

The defendant answered by general denial, and specifically denied that plaintiff was injured in the manner alleged in the petition. The answer further alleged that if plaintiff is in the condition alleged in the petition, said condition is due wholly and solely to a disease which was existing prior to the date of the accident; and further, that the driver of the automobile was plaintiff's son, and that plaintiff had complete control over the manner in which the driver drove the automobile, and that by plaintiff's failure to exercise such control, plaintiff assumed the risk of the careless and reckless driving, if any.

Reply was by general denial. Trial was to a jury, resulting in a verdict and judgment in favor of plaintiff in the sum of $10,000, and defendant appeals.

Defendant sets up twelve assignments of error.

The first assignment presented in the brief is No. 11. Thereunder he submits the proposition that the trial court erred in refusing an instruction requested by defendant to the effect that defendant was liable only for such injuries as might be found resulted from his negligence, or that of his agent, and the natural and probable consequences that flowed from the same, and that if the jury should find from the evidence that plaintiff was in fact afflicted with an ailment or disease, the extent of which was then unknown and which afterward developed to such an extent as to result in permanent injury to plaintiff, defendant was not liable in this case for the condition of plaintiff which was the result of said impairment or disease.

There was evidence by plaintiff tending to prove that plaintiff was suffering from "traumatic neurosis," caused by the injuries received in the accident. There was evidence by defendant tending to prove that plaintiff was afflicted with "neurosis" to some extent before the injury.

Defendant contends that he was entitled to this instruction under the pleading and proof. Each party is entitled to an instruction covering his theory of the case as pleaded, if there is evidence reasonably tending to support such pleading.

But in this case the court in instruction No. 5 covered this part of the defense. Therein the court told the jury:

"In this connection, you are further told that even though you find from the evidence that the plaintiff was injured as the result of the negligence of the agent of the defendant, still he would not be entitled to recover of the defendant for any suffering or injuries brought on by worrying over financial troubles, litigation, or from any source or condition other than the accident in evidence. In other words, the defendant (if found liable for the plaintiff's injury) is only liable for such suffering, pain, and injury which directly. naturally, and proximately flowed from the accident in controversy herein, and not from any disease or its results."

This instruction covered, not only any pre-existing disease or its results, but also worry and injuries brought on from any source or condition other than the accident in evidence. There was no error in refusing the instruction requested.

It is next contended that the court erred in permitting plaintiff to amend his petition over the objection of defendant after the close of the evidence in chief. The ground upon which the amendment was requested was, "In order to conform to the proof, admitted without objection from the defendant."

The amendment allowed was: "That said injury permanently and seriously shocked and injured plaintiff's nervous system, injuring permanently and almost totally disabling plaintiff, both mentally and physically."

The contention is that this is a new injury pleaded, the proof of which was made over objection of defendant. The contention

is that plaintiff was permitted over the objection of defendant to submit proof tending to show that he was afflicted with "traumatic neurosis" as a result of the injury. That traumatic neurosis was not mentioned in the pleadings, and this is one alleged condition that defendant did not know he would be called upon to meet.

It is true that "traumatic neurosis" was not mentioned in the original petition, neither is it mentioned in the amendment.

Plaintiff did allege in the original petition "that said injury to plaintiff's brain is permanent and by reason thereof plaintiff's nervous system has been so shocked and disturbed that plaintiff is unable to transact his ordinary business, and because of said injuries plaintiff will never be able to transact ordinary business."

The evidence objected to and claimed by defendant to be the only basis for the amendment allowed at the trial was clearly admissible under the original petition. The amendment requested and allowed was unnecessary to support plaintiff's case. The allowance thereof was not prejudicial to defendant. This contention cannot be sustained.

It is next contended that the court erred in admitting certain incompetent evidence offered by plaintiff and objected to by defendant.

As a part of his defense, defendant offered in evidence an application for life insurance, or rather for reinstatement of a lapsed policy, appearing to have been made and signed by plaintiff on or about May 29, 1930, some seven months after the alleged accidental injury. Part 2 of this application appears to be statements made by applicant (plaintiff herein) to the medical examiner for the Continental Life Insurance Company, in the form of questions and answers. "Question No. 5 was: Have you ever had any disease or impairment of (a) brain or nervous system? Ans. No. (b) Head—No., etc. (G) Any other disease, injury, or operation? Ans. Yes, head injury 1929, duration two weeks, result good, name and address of medical att. Drs. Lowe and Lynch, Tulsa. Question No. 9: Are you now in good health? If not, state cause of ill health. Ans. Yes." This part of the application was signed by Harry Kirschner, and above his signature was a certificate that the above answers were full, correct, and true. It was witnessed by H. Lee Farris, M. D. Dr. Farris was the examiner. He was called as a witness for defendant and testified, in substance, that the questions

contained in the above instrument were propounded by him, Dr. Farris, to plaintiff, and the answers were recorded and written down by the witness as made by the applicant.

In rebuttal plaintiff produced as a witness Simon Sellinger, the general agent for the insurance company, and who acted as agent for the company in the matter of the application to reinstate plaintiff's policy. He testified that he was present when Dr. Farris made the examination and propounded the questions to plaintiff. He was then permitted, over the objection of defendant, to testify that he heard plaintiff make certain statements concerning his physical condition which were not contained in the written answers, as follows:

"Q. What did Harry Kirschner tell the doctor on that occasion with respect to his condition? Mr. Gotwals: To which we object as incompetent, irrelevant, and immaterial, improper rebuttal testimony and an impeaching question with no proper predicate laid therefor. The Court: Overruled. Mr. Gotwals: Exception. A. Mr. Kirschner told Dr. Farris he had an accident on October 9, 1929. He told him the name of the two doctors who took care of him during his disability. Q. What else did he tell him? A. He told him he had a dizziness in his head. Q. What else, if anything, did he tell him? A. That is all he told him. Q. What was said, if anything, by Harry Kirschner with respect to whether he thought he was in a condition to pass this examination? A. I asked Dr. Farris to check him over again and see if we could get the policy reinstated. Q. What did Harry Kirschner say with reference to whether he thought he could pass the examination? Mr. Gotwals: Object to that as incompetent, irrelevant, and immaterial and asking an impeaching question with no predicate laid therefor. The Court: Overruled. Mr. Gotwals: Exception. A. I told Dr. Farris he was being examined because I had made the request for him to get the policy reinstated, and he said he had been sick since October; this examination was made about May 25th. Q. What, if anything, did he tell the doctor with reference to his ability or inability to pass this examination? A. He said he didn't think he could pass the examination, but he would leave it to the doctor."

And further:

"Do you recall whether this application was accepted or refused? Mr. Ambrister: We object to that as immaterial whether he was accepted or refused. He made the representations just the same. The Court: Overruled, the jury is entitled to know all the facts. Mr. Ambrister: Exception. A. The company refused to reinstate the policy."

It is contended that this evidence was clearly inadmissible. First, because entirely hearsay; second, because purely self-serving; and third, because the statements by the witness Sellinger were for the purpose of impeaching Dr. Farris and no predicate therefor had been laid.

It must be conceded that there was no proper predicate laid for impeaching evidence.

It is contended by plaintiff that this evidence was not offered for, nor was it in impeachment of Dr. Farris, but was intended to show the complete statement made by plaintiff to the doctor as and a part of the transaction wherein plaintiff had made declarations or admissions against his interest. That is, that he was then in good health and had fully recovered from the effects of the injury. But it is, in effect, impeachment of the witness Farris.

The argument of plaintiff in his brief clearly indicates that it was so intended and did, in fact, have that effect. He states in his brief in commenting on the question of admissibility of this evidence and its effect:

"View this picture, if you please. Here was a man in failing health, who knew his infirmity, who stated that in his own judgment he could not get the policy. Nevertheless, he was led to the doctor, who passed him. The undisputed facts upon this point do not reflect credit upon the witness Dr. Farris, who pronounced Kirschner a good risk. He had already received his death blow. He told Dr. Farris about the accident, about his dizziness, etc. But the doctor passed him as good. No wonder the doctor freely admitted on the stand that he was not an expert."

Plaintiff cites and relies upon the rule stated in 22 C. J. 413, that "Where an oral admission of a party has been shown, he is entitled to show the entire statement which was made at the time either by cross-examination of the witness who testified to the admission or by means of other witnesses."

The declaration or admission here involved was in writing signed by plaintiff. The testimony of Dr. Farris on this point went more to the question of the full understanding of plaintiff and oral answers to the questions made before the instrument was signed. That is, that plaintiff knew and understood the contents of the written statement which he signed.

In some jurisdictions it has been held that a contemporaneous oral explanation of a written admission may be shown. 22 C. J. 414.

In Marks & Stix v. Hardy, Adm'r (Ky.) 78 S. W. 864, wherein the question of the existence of a partnership between defendant's decedent and his son was an issue, articles of dissolution of partnership signed by decedent in his lifetime were put in evidence by plaintiff as an admission by him that such partnership did exist, and that he was a partner. It was held that declarations made by decedent at the time he signed such articles denying the existence of the firm were properly admitted as a part of a transaction which plaintiffs themselves had undertaken to introduce in evidence. Under the rule there applied, the testimony of the witness in relation to the statements made by plaintiff to the examining physician was admissible as a part and parcel of the transaction the defendant had injected into the case. The weight and credit to be given to two conflicting statements was for the jury.

As to the testimony of this witness that the insurance company refused to reinstate the policy, no authority is cited tending to hold such testimony admissible. It was objected to, and the objection should have been sustained.

The fact that the insurance company rejected the application had no bearing whatever on the issues. It was no evidence whatever going to the merits of the case. The judgment of the insurance company as to whether or not plaintiff was a good risk for insurance has no place whatever in this case. Its injection was prejudicial in that the jury might have concluded that if the insurance company considered plaintiff not a good risk, he must have been disabled.

It is urged under several propositions that the court erred in giving instruction No. 2, as follows:

"You are instructed that the plaintiff in this case has alleged that among other acts of negligence the defendant, through his agent E. P. Kirschner, violated certain city ordinances of the city of Okmulgee. You are instructed that the violation of a city ordinance relating to the driving of an automobile constitutes negligence in itself, and if you find from a preponderance of the evidence that the driver of the car, E. P. Kirschner, violated any of the city ordinances of Okmulgee admitted in evidence in this case, then you are warranted in finding that he was guilty of negligence."

This instruction standing alone is objectionable for the reason that it makes no reference whatever to the essential element that such violation be the proximate cause of the injury, or that the injury complained of was the result of the violation of the

ordinance or ordinances admitted in evidence. This defect, however, is, in effect, cured by the next instruction, wherein the jury was told that in order to find for plaintiff the jury should find and believe from the preponderance of the evidence that the agent of defendant drove said car in a negligent or careless manner, or violated some one or more of the ordinances of the city of Okmulgee introduced in evidence, and that as a result of such negligence or violation, if any, of said ordinance, or ordinances, the plaintiff was injured, and that said negligence or violation of ordinance, if any, was the proximate cause of plaintiff's injury.

Defendant contends that in both instructions the jury was, in effect, told that if it was shown that any ordinance or ordinances admitted in evidence were violated, the jury would be justified in finding defendant guilty of negligence in this case, whereas there were a number of provisions of the ordinances admitted in evidence which had no bearing whatever on the case and of the violation of which there was not the slightest evidence.

In this contention there is merit. It must be borne in mind that the only specific acts of negligence stated in the petition were that the automobile was being driven at an excessive and unlawful rate of speed, to wit, 30 miles per hour, and failure to observe a "slow" sign in approaching the double dip. By amendment it was alleged that the cause of plaintiff's injury was the violation of certain provisions of the ordinance of the city of Okmulgee, setting out four subsections of section 5, and sections 18, 24, and 30, of ordinance No. 628.

The first was subsection (b), providing that vehicles shall be driven in a careful manner and with due regard for safety and convenience of pedestrians and of other vehicles. There was no allegation that the automobile was being driven without due regard to the safety or convenience of pedestrians or other vehicles. Thus the jury might have found and believed from the evidence that the automobile was so driven, and therefrom concluded that the driver was, on that account, guilty of negligence in this case.

Subsection "G" prohibits violation of the right of way regulations contained in the ordinance.

Section 18 provides that any vehicle proceeding upon any street designated as a boulevard shall have the right of way over any vehicle upon an intersecting street not so designated, provided, that any vehicle before crossing or entering upon any boulevard shall come to a dead stop at the stop line or marker established for that purpose. There was no allegation or proof of any violation of the right of way provision.

The only parts of the ordinance applicable to the case and the violation of which the jury was entitled to consider under the pleadings and evidence, were the "speed limit" provision, 25 miles per hour on boulevards not in the business district and one-half that speed at intersections, and the provision relative to observance of "slow signs."

A valid ordinance, when properly pleaded and proved, stands upon the same footing as a statute. Klein v. Mulhausen, 83 Okla. 21, 200 P. 436.

"Instructions are directions in reference to the law of the case, enabling the jury to better understand their duty, and to prevent them from arriving at erroneous and wrong conclusions." Butler v. Gill, 34 Okla. 814, 127 P. 439.

An instruction under which a jury might find a verdict based upon the violation of a city ordinance where there is no plea or proof of such violation should not be given.

The court should have confined its instructions on the question of violation of the ordinances to those provisions pleaded and of the violation of which there was some evidence.

OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.