**HERRIAN, Adm'r, v. UNION EQUITY CO-OPERATIVE EXCHANGE.**

No. 24017.  March 12, 1935.

Rehearing Denied May 28, 1935.

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiff in error.

Dyer & Smith, for defendant in error.

RILEY, J. This is an appeal from a judgment in favor of defendant in an action to recover damages for alleged wrongful death. Deceased, Charles N. Herrian, received the injuries which caused his death while working at a grain elevator owned and operated by defendant. The elevator had been in operation but a short time when deceased received the injuries which caused his death. At that time a carload of wheat was being loaded out of the elevator. In the operation the wheat was elevated to the top floor of the elevator through two elevator pipes called "legs." At the upper end of each of the two "legs" was attached a distributing spout. These spouts were movable and were arranged so that the wheat could be delivered to any one of 18 different tubes or pipes, whereby it could be sent to different compartments or into cars for shipment. One of these pipes or tubes led to a dryer constructed on one side of the elevator, by means of which damp or heat wheat could be dried. Wheat, when sent through the dryer, would pass out through an opening into a pit at the bottom. This opening was fitted with a sliding door, which when closed would cause wheat to accumulate in the dryer, and was never supposed to be closed when the dryer was in use. Sixteen of the down pipes led to different compartments. The seventeenth led to the weigher used in weighing wheat as it was being loaded into a car for shipment. The eighteenth led to the dryer. When wheat was being loaded into a car for shipment, the spout leading from the mouth of the elevator or "leg" was supposed to be set over the mouth of the down spout or pipe leading to the weigher. None of the wheat was supposed to go into the dryer. The dryer room was constructed on the side of the elevator, the roof over the dryer room being some 60 feet above the ground. The lower part of the dryer rested in part upon a roof over a shed known as the loading shed, which was about 25 feet from the ground.

The immediate cause of the injury to deceased was that one of the distributor spouts instead of being set over the down spout or pipe leading to the weigher was set over, or partially over, the down spout or pipe leading to the dryer, or after having been set in its proper place became disarranged in some way and moved over and to the down spout or pipe leading to the dryer, so that instead of all the wheat, after being elevated, going down to the weigher and thence into the car, a part thereof went into the dryer. The dryer not being in use, the

gate or opening in the bottom thereof was closed. As a result the dryer compartment filled with wheat and several thousand pounds ran out upon the roof of the loading shed. When this was discovered, Mr. A. P. Koop, an employee of defendant, whose duty it was to operate the dryer when it was in use, and also to set the distributor spouts over the proper chute when the wheat was being elevated for any purpose, discovered that the gate at the bottom of the dryer was closed. He and deceased attempted to open the gate by the use of levers attached thereto for that purpose, but were unable to do so because of the weight of the wheat which had accumulated in the dryer. They then procured a ladder and Koop went up and onto the roof of the shed, and called to deceased to bring him a bar that was sometimes used to pry open car doors. The purpose was to use the bar to pry the door of the dryer open so that the wheat would run out. About the time deceased reached the top of the ladder with the bar, the roof of the shed collapsed, throwing both Koop and deceased to the ground, injuring Herrian and causing his death.

The negligence pleaded was in substance failure of defendant to furnish deceased a safe place in which to work, and with safe tools, apparatus, appliances, machinery, and equipment with which to work, and faulty, improper, impractical, and negligent construction of the elevator, and the machinery, equipment, and appliances installed therein, and in the faulty construction of the car shed and dryer.

E. N. Puckett was the general superintendent of the defendant company. Deceased was superintendent in charge of buying grain from the farmers, and had charge of the elevator. He employed the help to operate it and directed the loading of wheat into cars for shipment.

The elevator was constructed by A. F. Roberts Construction Company, designer and builders, under a contract entered into by the respective companies, E. N. Puckett acting for defendant company, and A. F. Roberts acting for the construction company. The contract provided that the construction company was to furnish a superintendent whose salary was to be paid by the elevator company.

The distributing device was designed and constructed so that distributor spouts could be put in any position desired by the operator in charge from the working floor. That is, a system of cables, pulleys etc.,

whereby the operator on the floor could by a single operation set each distributor spout so as to connect with any one of different down spouts or chutes without going to the top of the elevator, about 100 feet above the ground.

It was in evidence that such device had never worked after the elevator had been placed in operation. This was probably caused by the settling of the building, caused probably, in part at least, by shrinkage of the lumber or material of which the elevator was constructed, causing the cables leading from the working room to the distributor to become too long.

Before the loading of the wheat was commenced on the day the injury occurred, Koop went to the distributor room at the top of the elevator for the purpose of setting by hand the distributor spout over the proper chute leading to the weigher. It was necessary to do this each time a change occurred in the course of distribution of the wheat.

There was evidence tending to show that when the distributor spout was once properly set it would stay in that position until moved by hand. It was also in evidence that at least on one occasion it had become loose and moved over to the chute leading to the dryer. This may have been caused by vibrations set up by the machinery, or by reason of a weight attached to the spout as a sort of counterbalance to assist in carrying the weight of the spout when moved by the machinery as it was designed to operate.

On the day of the accident the distributor spout either became disarranged by one of the above causes or by the negligence of Koop in not setting it in the right place in the first instance or not properly adjusting same.

If it was because of the negligence of the operator, Koop, then the fault was that of a fellow servant and plaintiff could not recover. If it was because of any negligence in the construction or arrangement of the elevator and machinery so as to render unsafe the place in which deceased was required to work, a different rule would apply.

Koop was a witness for plaintiff and testified in chief that he set the distributor spout over the chute leading to the scales. But upon cross-examination he said he was not sure on that point, and further stated that had it been properly set and connected,

it would not have become disengaged. He insisted, however, that "according to my opinion, I set it in the scales."

The trial court sustained the demurrer to plaintiff's evidence, and it is of this action plaintiff complains.

The rule is well settled that the test to be applied to a demurrer to the evidence is: That all the facts which the evidence in the slightest degree tends to prove are admitted and all inferences or conclusions which may be reasonably and logically drawn from the evidence, viewed in the light most favorable to the party against whom the demurrer is directed, may be taken into consideration. The court cannot weigh conflicting evidence, but must treat that evidence which is favorable to the movant of the demurrer as withdrawn and exclude it from consideration altogether.

Plainly, it was the duty of the court passing upon the demurrer to discard all consideration of the evidence which had a tendency to prove that the injury was attributable to the negligence of Koop, a fellow servant of deceased.

Then, considering the evidence, we must look to the manner of the construction of the machinery and particularly the distributing device; that it was intended to be operated from the ground floor; that it never would work; that there were weights attached to the distributing spout designed to be a help in carrying the weight in moving it from place to place; that there was considerable vibration when the machinery was in operation; that the distributor spout had slipped from its proper place and discharged wheat into the dryer on one occasion before, and other evidence tending, at least slightly, to prove negligent construction of the elevator.

In such circumstances we cannot say that there was no evidence whatever tending to prove primary negligence upon which a jury could base a verdict for plaintiff.

The jury is the ultimate trier of the facts. It could, of course, consider all the evidence, including that which was most favorable to defendant in finally determining what the facts were. But the trial court in passing upon the demurrer to the evidence should not do so.

In this case there was some evidence reasonably tending to prove plaintiff's case, and the demurrer should have been overruled.

The judgment is reversed and the cause is remanded for a new trial.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.