## DUCK et ux. v. SELECTED INVESTMENTS CORP.

No. 31919. March 12, 1946.

167 P. 2d 54.

Sam S. Gill, of Oklahoma City, for plaintiffs in error.

Paul Washington, of Oklahoma City, and Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for defendants in error.

WELCH, J. Plaintiff Duck sued dedendant Selected Investments Corporation for the prescribed penalty for usury alleged to have been paid and collected on a loan of money.

The controlling question, or the first question to be determined on this appeal, is whether the trial court committed error in sustaining defendant's demurrer to plaintiff's evidence, discharging the jury and rendering judgment for defendant. Therefore we will here state only sufficient details of the pleadings and the plaintiff's evidence to consider and dispose of that question.

In material substance plaintiff alleged the borrowing of $1,700, and the paying back of the aggregate sum of $2,325 principal and interest in 13½ months, thus showing payment of $625 in usurious interest.

The defendant's answer in material substance admitted the loaning of $1,700, but pleaded that plaintiff and defendant in good faith entered into an additional separate and distinct transaction by which defendant agreed to sell, and plaintiff agreed to buy, a certain interest, represented by an investment trust certificate, in a trust fund and the earnings thereof which was set up and maintained pursuant to legally authorized and executed declaration of trust, and that defendant was specifically authorized by law to set up and maintain such business trust, and to sell participating certificates therein; that the $2,325 paid by plaintiff was made in payments on the purchase of such interest or participating share in such trust fund, together with interest at the rate of 10% and no more on the loan of $1,700. Defendant attached as exhibits to its answer documents alleged to be copies of a "Subscription for Certificate" and "Investment Trust Certificate" employed by the parties in the purchase and sale transaction pleaded.

The plaintiff, by reply, denied the allegations of the answer and alleged in effect that the purported separate

548

transaction by which defendant claimed the plaintiff purchased a so-called investment trust certificate was nothing more than a plan and scheme on defendant's part to collect an unlawful rate of interest and to conceal that transgression of the law by the form only of some other transaction, and that in fact there was no such good faith transaction of purchase and sale as alleged by defendants in the answer.

Upon trial before the jury plaintiff was the only witness. On direct examination she testified to the exact substance of the facts alleged in her petition so that her testimony on direct examination definitely stated the payment of usurious interest in the sum of $625. Also on direct examination the plaintiff identified and offered in evidence, without objection, a letter from defendant demanding final payment of $30.09 which referred to plaintiff's loan as being "in the sum of $2,125." Plaintiff then made final payment in that sum. This letter was in error in stating the amount of plaintiff's loan and unexplained might tend to support plaintiff's testimony, but, as above stated, the plaintiff testified definitely as to the payment of usurious interest, giving the details thereof.

On cross-examination plaintiff was handed a document identified as defendant's exhibit No. 1. She was asked if it bore her signature and replied in the affirmative. Defendant then offered it in evidence as defendant's exhibit No. 1, the court reporter's notes describing it as "the subscription for certificate." Plaintiff objected to defendant's exhibit 1 as incompetent, irrelevant and immaterial, and not within the issues. However, we do not understand that objection, as the exhibit was within the issues, having been specifically pleaded by defendant. That objection was overruled and defendant's exhibit 1 was admitted. When incorporated in the record this exhibit 1 included the investment trust certificate as well as the application or subscription therefor referred to in interrogating the witness. There were copies of the documents attached to defendant's answer. During plaintiff's cross-examination defendant introduced some other documents apparently offered and relied upon to sustain the allegations of defendant's answer heretofore noted, which were relied upon by defendant in the pleadings.

The plaintiff admitted little or no knowledge of such documents or the aggregate facts shown or represented thereby. Assuming, under defendant's pleadings, that such documents constituted a proper part of the defendant's case, and that they may have tended to prove the defense asserted, yet such evidence could not be weighed and considered upon defendant's general demurrer to plaintiff's evidence.

The rule is well settled that a demurrer to plaintiff's evidence admits every fact which plaintiff's evidence in the slightest degree tends to prove, with all evidence favorable to the defendant or demurrant eliminated from consideration. See Murnan v. Isabell et al., 133 Okla. 160, 271 P. 649; Hyde Construction Co. v. Stevenson, 181 Okla. 8, 72 P. 2d 354; Herrian v. Union Equity Co-Operative Exchange, 172 Okla. 393, 45 P. 2d 151.

Documentary evidence relied on by the defendant in his answer, though identified and offered in evidence while the plaintiff is on the witness stand, and though it tends to establish the defense pleaded, is considered as withdrawn in testing the sufficiency of plaintiff's evidence to withstand defendant's demurrer thereto. This rule was followed in Davis v. Curry, 192 Okla. 32, 133 P. 2d 186. In that connection see, also, Buellesfeld v. Jones, 187 Okla. 595, 105 P. 2d 242.

Thus at the conclusion of plaintiff's evidence, when defendant generally demurred thereto, the state of the record was that plaintiff's oral testimony, taken as true, definitely established payment of usurious interest. Documentary evidence offered as defendant's exhibits tended to indicate the nature of the defense, but for the pur-

pose of considering the demurrer to plaintiff's evidence these documents could not be weighed or evaluated as evidence and were treated as withdrawn for the purpose of the demurrer.

It is therefore apparent that the trial court erred in sustaining defendant's demurrer to plaintiff's evidence. Whatever weight this documentary evidence might have when weighed and considered as a part of the defense, any reliance placed thereon by the court in passing upon the demurrer was premature.

It is suggested in oral argument that the letter offered in evidence by plaintiff was merely an error insofar as it referred to plaintiff's loan as being in the amount of $2,125, but no such explanation was given in evidence since defendant's demurrer to plaintiff's evidence was sustained, and defendant introduced no evidence either to explain the letter or to establish its defense by a good faith separate transaction by which the plaintiff agreed to and did buy and the defendant did sell the participating investment trust certificate, as alleged and relied on in defendant's answer.

Since we must reverse the judgment for error in sustaining the demurrer, thus requiring a new trial, we notice also plaintiff's allegation of error in the rejection of evidence.

The essential facts on that point are as follows: After cross-examination of the plaintiff accompanied by defendant's introduction of several of its own exhibits, the plaintiff on redirect examination was asked the question, "Now on what statement or representation, if any, did you sign this big group of papers that has been introduced in evidence?"

Defendant's objection thereto was stained, apparently on the ground that the matter inquired about would be incompetent, irrelevant and immaterial. Plaintiff in her reply had not alleged any fraud or misrepresentation by defendant in connection with the execu-

tion of any of the documents set up in defendant's answer.

Thereupon the plaintiff made offer to prove that it was stated to the plaintiff at the time of the signing of those documents that they were merely in connection with and for the purpose of effecting her loan, and it was the plan and system used by the defendant in order to secure a loan from it. That offer of proof was objected to and the objection thereto was sustained.

It will be noted that the above-quoted question and the subsequent offer of proof were both somewhat indefinite. If the plaintiff thereby sought to prove some fraudulent representation or false or fraudulent statement made to induce her to make the purchase referred to, then defendant's objection might well merit sustaining for lack of allegation by plaintiff that there were any such false or fraudulent statements made which were relied upon by her in the purchase.

By the question and offer of proof, if plaintiff intended and desired to refute the apparent contention of the defendant of a separate good faith voluntary transaction involving the purchase and sale of an interest in an investment trust, the interrogation and offer of proof should have been much more specific on the point. In that event the error of the court, if any, in rejecting such proof would have been much more apparent.

It may be that plaintiff intended the more orderly practice of offering full details of her contention along that line in rebuttal after defendant in his evidence had established or sought to establish the full character of the good faith separate transaction relied on in the answer. That intention and purpose on the part of the plaintiff is somewhat indicated by the fact that these matters were not inquired about in plaintiff's direct examination.

At any rate, upon further trial herein, any offer of proof on the part of plaintiff to establish payment of usur-

ious interest and to refute defendant's defense against the charge will doubtless be presented in more definite and certain language so as to obtain the admission thereof by the trial court or be sufficient to definitely disclose any error that may occur in the rejection thereof. Certainly the plaintiff has full right to present any facts tending to show the alleged payment of usurious interest. While defendant has the complete right to present any facts tending to establish a defense by showing that no usurious interest was collected, the plaintiff in proper manner may refute any defense offered.

For error of the trial court in sustaining demurrer to plaintiff's evidence the judgment for defendant is reversed, and the cause remanded for new trial.

GIBSON, C. J., HURST, V. C. J., and CORN, DAVISON, and ARNOLD, JJ., concur. OSBORN and BAYLESS, JJ., concur in result. RILEY, J., dissents.

RILEY, J. (dissenting). By majority, a new rule of evidence is construed, at variance with English and American jurisprudence. It is inherently erroneous; the advent of it transcends the importance of the law of usury involved in this particular case, for, by the new rule, the want of facts to constitute a cause of action in any field of law is extended by a fiction.

The law of evidence, said by the late inimitable Professor Wigmore, to be already chaotic in the area including this jurisdiction, is by the error further corrupted. The majority opinion states:

"Documentary *evidence* relied on by defendant in his answer, though identified and *offered* in evidence *while the plaintiff is on the witness stand,* and though it tends to establish the defense pleaded, is *considered as withdrawn in testing the sufficiency of plaintiff's evidence to withstand defendant's demurrer thereto.*"

"*Documentary evidence* offered as defendant's exhibits tended to indicate the nature of the defense, but *for the purpose of considering the demurrer to plaintiff's evidence, these documents could not be weighed or evaluated as evidence* and were treated as withdrawn for the purpose of the demurrer."

Reduced to its simplest form, the newly-created rule of evidence is:

"Evidence adduced on cross-examination of plaintiff is considered withdrawn when plaintiff's evidence is tested by demurrer."

While the novel rule as announced is predicated upon documentary evidence, surely it would apply as well, if not more forcibly, to evidence in parol, and therefore to all evidence. As to the character of documentary evidence considered withdrawn in the case at bar, it would seem that:

"A party, being presumed to know the effect of what he has undertaken by his signature, is a fortiori presumed to know the contents of an instrument signed by him . . . (and) presumed to know . . . the full import and scope of the terms of said contract before making himself a party to it". The Law of Evidence in Civil Cases, Jones, vol. 1 § 25, p. 155.

When a writing is produced and a witness answers on cross-examination that he is a party to it, he cannot be asked whether or not such and such statements are contained therein. If the writing is read in evidence, it should be offered by the cross-examining counsel as a basis of cross-examination. In other words, the old rule is that written instruments should be proved by the instruments themselves.

The documents involved in the case at bar and by the majority considered as withdrawn were admitted upon cross-examination and are in evidence. What purpose does the evidence serve?

"The cross-examination is primarily to weaken the opponent's case" (Jones Vol. 2, § 821) . . . to cut down, modify, or explain the testimony given on direct examination, even though in so doing he might elicit evidence which would destroy the opponent's claim or render the testimony inadmissible."

"All such evidence so brought out on

cross-examination is evidence given on behalf of the party calling the witness."

"One of the objects of the cross-examination is to elicit the whole truth of transactions, only partly explained". Page 116.

"Hence questions intended . . . to explain or modify some inference which might otherwise be drawn from his testimony are legitimate cross-examination."

Thus as a part of the conversation or transaction has been given in direct testimony, the remainder, so far as it is relevant, may be called out by the cross-examination. It is to the sum total that the speaker has committed himself. Holler v. Miller, 177 Md. 204; 9 Atl. 2d 250; Kirschner v. Kirschner, 169 Okla. 129, 36 P. 2d 297.

Any question directly tending to show that the real import of the testimony of the witness is materially different from that conveyed by the examination in chief falls within the range of legitimate cross-examination.

Admission made in the testimony of a party while a witness in the case are binding and conclusive if deliberate and unequivocal and unexplained or uncontradicted. 31 C. J. S. 1173.

It was held in Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S. W. 2d 569, that one who admits positive and definite facts which defeat his right to recover is concluded by such admissions and cannot complain of a direction of a verdict against him, if the admission is not successfully modified or explained to show he was mistaken in good faith. Sturm v. American Bank & Tr. Co. of Ardmore, 172 Okla. 294, 44 P. 2d 974.

Plaintiff's statements as a witness in his own behalf, which directly contradict material allegations of his complaint, constitute informal judicial admissions which are accorded the quality of prima facie proof and for the purpose of the action must be taken as true. Van Meter v. Zumwalt, 35 Idaho, 235, 206 P. 507. An inconsistency must be explained or admission against interest in testimony is conclusive. Scott v. Kansas City Public Service Co. (Mo. App.) 115 S. W. 2d 518.

The fact of such an admission on cross-examination may be a retraxit, analogous to a nolle prosequi, but barring any future action. Arthur v. Henry, 157 N. C. 393, 73 S. E. 206; Mathis v. Tutweiler (C. C. A. Tenn.) 295 Fed. 661; Cox v. Jones, 138 Ore. 327, 5 P. 2d 102. Such evidence in writing is of a highly satisfactory character. 31 C. J. S. § 382, p. 1180; Grimmett v. Grimmett, 80 Okla. 176, 195 P. 133; Patterson v. Morgan, 53 Okla. 95, 155 P. 694. It dispenses with the necessity of any other proof of the fact admitted. In Re Assessment of Alleged Omitted Property, 177 Okla. 74, 58 P. 2d 134, we said "In such cases the facts admitted must stand as true". Higby v. Martin, 167 Okla. 10, 28 P. 2d 1097. Written statements of a party, made at or shortly after time of transaction, will outweigh the later parol testimony given after controversy has arisen, and when he is interested in different results. McGann v. McGann, 169 Okla. 515, 37 P. 2d 939. Such is the rule as to documents and instruments. Tursi v. Parry (Pa.) 5 Atl. 2d 399.

The purpose of evidence is ascertainment of truth. Rules as to evidence are vehicles to convey truth. When the testimony of a witness on direct examination is so modified as to be set at naught by the evidence of the witness on cross-examination and the sum total of the witness' evidence is tested by a demurrer, will it be said that by the testimony of the witness in chief he established the truth, whereas on cross-examination he disestablished it? No—in such instance, in the absence of an explanation, there is no escape from the rule falsus in omnibus.

Independent of any rule of evidence, from the case-made before us, this court knows that plaintiffs, Ducks, based their action for usury upon defendant's loan to them of $1,700 for one year, and their execution and delivery

to defendant, amongst other instruments, of a promissory note in the amount of $2,125, payable within one year, and by them paid. Thus an action for usury was alleged. When plaintiffs sought by the testimony of one witness to prove their cause of action, that witness, the plaintiff, Nina Duck, on direct examination, limited her testimony to parts of the dual, contractual loan-investment transaction so as to make out her case of usury. However, on cross-examination, the witness admitted that she had borrowed and received from defendant a loan of $1,700 for only 30 days, at 10% interest, for which she executed and delivered her promissory note in that even amount, and not for the sum pleaded in her petition; that the loan note for $1,700 bears interest at 10%; that at the same time she subscribed for an investment with defendant, received an investment certificate and pledged it to secure her loan of $1,700.

An investment certificate of the face value of $2,125 is of record, for which plaintiff executed and delivered to defendant her investment note, without interest, in the amount of $2,125, and this note, upon payment, was returned to plaintiff. She has covertly pleaded that note as constituting the loan of money. By evidence contained in the case-made and by the majority accepted as properly admitted but fictitiously withdrawn, it doth appear beyond dispute that plaintiffs' total payment to defendant for interest on the loan and to constitute the investment contracted was in the gross amount of $2,325.13. Of the sum so paid, plaintiffs, Ducks, by notation on checks and attached coupon receipts, allocated to the maturity of their investment the sum of $2,125. If the rules of arithmetic have not been also amended, of necessity the balance of plaintiffs' payment was in the sum of $200.13. Plaintiffs' loan note in the amount of $1,700 bore and bears interest at 10%; last payment by plaintiffs' check was made October 28, 1943. It was in payment of interest on the loan note. Of necessity, that note had accumulated for one year, two months,

and sixteen days at the date of last payment. The total amount of that interest amounts to the sum of $205.82. The balance of interest on plaintiffs' loan note as of the date October 28, 1943, amounts to $5.69. Thus to a mathematical record certainty, plaintiffs were indebted to defendant (for interest on the loan note in the amount and sum last stated) when suit was brought and plaintiffs are not, as a matter of law, entitled to prevail unless the dual contractual relation will be commingled to constitute of it one entire transaction limiting the relation of the parties to that of lender and borrower, in avoidance of that phase of the contractual relation under which plaintiffs, Ducks, are shareholders.

Since the date last mentioned and according to the record evidence, the contract rights of the parties amount to this: Plaintiffs have not paid the principal of their loan note. They are obligated to defendant for the principal thereof and unpaid interest thereon at the rate of 10%. Plaintiffs have matured their investment. It yields them 5% interest, if and when earned, together with pro rata increase or decrease in value of the trust fund under indenture, represented by the face value of the investment certificate as governed by provisions of the indenture.

The consequence is that since plaintiffs' last payment, October 28, 1943, they are borrowing money from defendant in the amount of $1,700 at 10% interest and investing their capital with defendant for an expected yield of 5% per annum. Each year that passes without a changed relation will find plaintiffs exactly $63.75 less solvent according to the terms of the contracts.

This is the identical plan considered and approved as a matter of law by this court in Selected Investments Corporation v. Spencer-Sedbrook, 196 Okla. 566, 166 P. 2d 764, and rehearing denied.

In the Spencer-Sedbrook Case, this court determined that:

"The enterprise in which defendant was involved . . . and in which plaintiff was engaged . . . is either legitimate, following the building and loan plan, or it is a cloak to hide usury, and this is so as a matter of law since the instruments are plain and unambiguous".

The rule of law obtains in appellate courts that "A court may take judicial notice of, and give effect to, its own records in another but interrelated proceeding, particularly where the issues . . . are . . . practically the same". 31 C. J. S. § 50 c., p. 626. A desire for uniformity in the law impels the rule.

The documentary evidence admitted upon plaintiff's cross-examination in the case at bar established the enterprise in which plaintiffs and defendant were involved and engaged: It likewise discloses defendant's plan of doing business.

Moreover, this court will take judicial notice of the statutes and so doing, 15 O.S. 1941 § 280.1 et seq., having for purpose the regulation of small loans, specifically exempts from its provisions "operators of what is known as the Morris Plan . . . (and) companies doing similar business" as well as the building and loan.

In Freed-Goodall Furniture Co. v. Morris Plan Co., 194 Okla. 556, 152 P. 2d 902, this court noted that it had not "heretofore passed upon the exact business plan . . . involved", observed that "we have passed upon similar situations in building and loan company cases", adhered to the rule in Mondie v. General Motors, etc., 178 Okla. 584, 63 P. 2d 708, holding that "Usury is never presumed." We said that it was never to be inferred, cited with approval Morris Plan Co. v. Lillie, 265 Mass. 98, 163 N. E. 749, "directing a verdict against the borrower". The court not only approved the plan here involved but as well the procedure of resolving the issues as a matter of law as in the last-cited cases, i.e., directing a verdict as a matter of law.

In the subsequent Spencer-Sedbrook Case, supra, citing Freed-Goodall Furniture Co. v. Morris Plan, supra, it was concluded: "This court has sustained a plan of business somewhat similar to that involved in the case at bar".

It is apparent that by legislative declaration the defendant's plan of doing business is excluded from the small loan regulatory statute. It is relegated to supervision of the statute of which courts take judicial notice. It was proved in the interrelated case (Spencer-Sedbrook, supra), argued orally and simultaneously with the case at bar. Independent of proof in the Spencer-Sedbrook Case, defendant corporation, as an investment trust, is subject to the regulatory provisions of the Securities Act, Title 71 O. S. 1941. Therefore, and before issuing to the public instruments of any character as investments, its plan of doing business must, as required by law, have been approved by an administrative agency of the state.

A presumption of innocence obtains in civil as well as criminal law. Odiosa et honesta non sunt in lege praesumenda.

In the case at bar, plaintiff's offer of proof was rejected by the trial court. It tended to show that plaintiffs signed the contracts constituting the dual relation, upon defendant's representation that the instruments were to effectuate the loan to plaintiffs; that the instruments constitute the plan and system used by defendant. The instrument speaks for themselves. They are in evidence and furnish the proof subject to be adduced.

The cause is not reversed by the majority because the proffered evidence was rejected. The proffered proof was irrelevant and immaterial.

One phase of defendant's business is the making of loans; another is that of investments, participation in which and mutuality of which is evidenced by the investment certificate issued upon plaintiffs' written application and comparable to stock. Like stock, it is expected to yield a dividend if and when paid up. The investment certificate

was issued upon a promise without any cash consideration. It was matured by installments. The matured investment has a contract loan value of 80% and with an option of the investor as to maturing installments, it may be surrendered in liquidation of the loan. Thus we know defendant's plan of doing business.

The cause is reversed, not because of insufficiency of facts proved, but because too much evidence adduced on cross-examination enlightened and informed the trial judge of the exact nature of the dual relation existing between the parties; too much education by the majority is abhorred. The cause is remanded for proof or that which is now presented. Not only is this proof established by the evidence, it is likewise presented by the pleadings, by plaintiffs' answer and reply (C.M. 32). "Exhibits B" and "C" are designated and described as plaintiffs' "subscription for the investment certificate", "the assignment on the back thereof", "the investment trust certificate", and "the $2,125 note". They are pleaded as constituting the defendant's plan and scheme to conceal the unlawful rate of interest which defendant thereby contracted to receive and was demanding (C.M. 33).

The defendant pleaded the same instruments as constituting "a separate and distinct transaction" (C.M. 36). With this state of the record, it may not be logically concluded that the plan of doing business is not revealed by documents pleaded, attached, and contained in the record. Nor may it be said, that the issue arising from the plan so established, i.e., whether plaintiffs' contracted and consummated investment with defendant constituted a scheme to conceal usury, or whether it is a separate and distinct transaction, is not before us. In view of our decisions it cannot be intelligently said that the matter thus presented is not either a question of law or an issue of fact. The consequence is that in view of this court's previous decisions a remand of the case at bar with directions to over-

rule demurrer and to grant a new trial is an idle gesture, destructive of justice because of its delay. That the plan of defendant's business is quite similar to the Morris Plan-Freed-Goodall Furniture Case, supra, and analogous in all material facts to that of building and loan plans is shown in briefs filed at the request of Mr. Justice Welch, February 12, 1946. This court has repeatedly held that loans under the building and loan plan are not usurious because of payments on stock.

The defendant corporation, as established in the Spencer-Sedbrook Case, as shown by public records, and as presumed by virtue of the statute, is licensed to operate and is regulated by the Securities Act under "The Blue Sky Law". One phase of its business is making loans; another is investments evidenced by investment certificates issued as in the case at bar without cash payment but on maturing installments credited on contractual promissory notes, not bearing interest. Defendant issues a coupon book. It is delivered to the investor-borrower. By the coupon issued, the investor-borrower allocates investment installments and allocates the interest paid upon the loan. The yield upon the investment is in the nature of a dividend payable out of the pro rata share of the total investment in trust under indenture. The maturing investment, less the service charge, may, within the option of the investor, be applied to the loan debt, but the borrower is not required to surrender the investment certificate nor apply his investment in liquidation of the loan. He may pay the principal and interest of his loan debt, relieve his investment from pledge and receive dividends ad infinitum subject to the indenture. In Freed-Goodall v. Morris Plan, supra, it is shown that the Morris Plan Company loaned money at 8% interest, deducted in advance, secured the loan by an assigned and pledged installment certificate, contemporaneously issued to the borrower. That investment yielded dividends of 3% extended to the installments paid. Within the option of the borrower, the investment certificate

could be surrendered in liquidation of the debt. Coupons were furnished the borrower-investor to allocate his payments. Mr. Justice Welch, in writing the majority opinion discussing their plan, referred to Security Thrift Syndicate v. Tidwell, 190 Okla. 377, 123 P. 2d 955, and by way of contrast showed that in the Tidwell Case the company never sold its bonds as an investment to the public. The accumulated investment installments yielded no dividends. The company made no loans without an investment by the borrower. The investor-borrower had no option to avoid cancellation of his investment in liquidation of his loan debt. In that case, this writer said: "The borrower purchases nothing but a shadow intended to cover the excessive interest charge made in connection with the loan of money. In building and loan transactions the borrower purchases stock in the association which he may, if he chooses, mature by payments and retain as an investment"; the transaction in the Tidwell Case was "not susceptible of two constructions, the one lawful and the other unlawful".

In the case at bar, there is no material difference between the method of doing business as proved and that of the Morris Plan. The only difference is that in the Morris Plan the maturing investment yields a dividend of 3% whereas herein the investment yields no interest until matured and then at a rate of 5%.

The record in the Morris Plan discloses the fact, not deemed of sufficient importance by the majority to be incorporated in the statement of the case, but in dissenting opinion stated, that the Morris Plan would only agree to make the loan upon condition of an investment by the borrower.

In Methvin v. American Savings & Loan Ass'n, 194 Okla. 288, 151 P. 2d 370, departure from the original building and loan plan to fix premiums for loans by competitive bidding was traced to the amendment of the statute, Union Savings Ass'n v. Cummings, 78 Okla. 265, 190 P. 869, and approved by our decisions. In the Methvin Case, supra, the defendant's contention that the note sued upon, given in purchase of stock and to secure a loan, was usurious, was set at naught by the use of these words employed: "The interest and monthly dues on stock payments, if separate obligations, cannot be commingled so as to show usury". Hickman v. Oklahoma Sav. & Loan, 169 Okla. 224, 38 P. 2d 928; Collings v. El Reno Bldg. & Loan, 175 Okla. 216, 52 P. 2d 57; Walker v. Local Bldg. & Loan, 176 Okla. 168, 54 P. 2d 1078. By paragraph 9 of the syllabus, we said:

"Where party agrees to purchase stock and borrow money from building and loan association, the interest and monthly dues on stock payments, if separate obligations, cannot be commingled so as to show usury".

Is there anything sacrosanct as to the corporation from which money is borrowed? Is the building and loan association, operating under the statute, as amended, exempted from the law of usury as stated in the Constitution, art. 14, secs. 2 and 3, whereas an investment trust, licensed and operating under the statute, is not exempted?

Will this court adhere to its rule of law stated in Hickman v. Oklahoma Sav. & Loan Ass'n, supra, "The construction to be placed upon written contracts, the terms of which are clear and unambiguous, is a question for the court and not a jury"? If so, the issue as to whether the obligations represented by the loan and the investment constitute separate transactions may as well be determined now and affirmatively. Otherwise, the law is cast loose from its moorings, embarked upon a sea of personal opinion under the dangerous rule of variable discretion. The Greek system of jurisprudence is invoked by which the sovereign sits in judgment to transmit the view of the gods to litigants and the decision in each case is permitted to stand alone. Financial transactions are subject to the vicissitudes of chance, courts of justice are guided by no rule or prece-

dent. Logic and regularity of conduct becomes the slaves of an abstraction.

Litigants in general, debtors and financial institutions in particular, by such vagaries in the law of evidence and of usury are left in wonderment. The victor or vanquished in lawsuits are determined by the whim, caprice, or discretion arbitrarily exercised, in the particular case by juries not versed in law.

Early in English jurisprudence the question arose whether such a charge of interest and cost of stock, which together exceeded the legal rate of interest, was usurious. For more than hundreds of years it has been held that the dual relations are not essentially those of a loan and borrowing transaction, but rather a mutual relation, in part, partaking of a partnership.

In America, one feature of the relation is designated as that of a shareholder, especially where the Legislature has promoted activities of the building and loan plan or investment trusts. Some decisions refuse to follow the English rule based on dual contractual relations. In such decisions, the issue whether the investment feature of the dual relation is a disguise, a scheme, cloak or device to hide or shield usury is left to the discretion of a jury for its determination upon the facts proved as measured by instructions from the court upon good faith of the transaction.

This court has departed from that doctrine. Very generally, in American jurisprudence, where the Legislature has by statute regulated investment loan activities, such as carried on by building and loan associations, the issue whether the regulatory statutes had served to place the dual relation beyond the pale of the usury law, is determined as a matter of law.

Such is the rule in this jurisdiction, evidenced by Aetna B. & L. Ass'n v. Rouch, 32 Okla. 735, 124 P. 34, Collings v. Industrial Savings Soc., 94 Okla. 271, 221 P. 1036. So that contract installments on an investment and a contract debt by one person with one corporation, running through a long series of years, the interest on the contract being the legal rate, "is not to be treated as a usurious loan; the payment supposed to constitute the usury by the terms of the contract being made on the stock debt, not the loan".

If the dual transaction is according to plan and unambiguous contracts and regulated by statute and the loan feature is within the statutory rate of interest, the investment feature is that of shareholder with mutuality of interest in indentured trust fund. That relation partakes of a partnership, there is no sale of anything that otherwise will be considered upon proof of an enhanced value to be mala fides prohibita, a shield to hide usury on the loan. But by contract, under regulatory statute, the remaining feature of the dual relation is merely an investment. Thus viewed, as a matter of law, the dual relation in the case at bar is lawful. Facts aliunde the documentary evidence is neither pleaded nor proved to establish a plan, scheme, cloak or device to shield usury. So the issue is not subject to an independent determination upon the question of good faith. Anna Loan & Imp. v. Durris, Anno. 74 A. L. R. 973.

In Union Savings Ass'n v. Cummins, 78 Okla. 265, 190 P. 869, the trial court found the dual relations to be usurious, but upon appeal, the judgment was reversed. This court has repeatedly affirmed or reversed judgments under the rule that "in determining whether a contract is usurious, if two constructions of the transaction are possible, one for and the other against usury, the one against usury will be adopted". Forman v. Needles, 78 Okla. 105, 188 P. 1087; Martin v. Oklahoma State Bank, 86 Okla. 113, 206 P. 837. The determination has heretofore been a matter of law.

There is no opinion of this or any other court or authority contained in textbooks on evidence to sustain the rule of evidence applied by the majority except Davis v. Curry, 192 Okla. 32,

133 P. 2d 186. In Herrian, Adm'r, v. Union Equity Co-op. Exc., 172 Okla. 393, 45 P. 2d 151, the writer stated the rule that on demurrer the evidence *favorable* to demurrer would be considered withdrawn and thus followed previous statement. Undoubtedly it would have been better to have employed the words "introduced by movant" in lieu of the word "favorable," but as Landis and Frankfurter, in their publication as to Supreme Courts, well said that if courts applied rules literally and exactly an intelligent child could function as well as a jurist.

I respectfully dissent.