## CHAMPLIN REFINING CO. v. LE FORCE.

No. 23961.   Jan. 14, 1936.

Rehearing Denied Feb. 11, 1936.

E. S. Champlin, N. Scarritt, and McKeever, Elam, Stewart & McKeever, for plaintiff in error.

Cress & Tebbe, for defendant in error.

PER CURIAM. The defendant in error, Frank LeForce, hereinafter referred to as the plaintiff, brought his action and recovered judgment in the district court of Noble county against Champlin Refining Company, hereinafter referred to as the defendant, for malicious prosecution.

The prosecution which was the basis of the action charged the plaintiff with disposing of an oat crop on which the defendant held a chattel mortgage. The complaint in the criminal action was sworn to by one

H. W. Carey, who, it was alleged in the amended petition, "was at all times herein involved the duly appointed, qualified and acting agent of each of the above-named defendants, and all his acts hereinafter alleged to have been done by the said H. W. Carey were done as the agent of the Champlin companies and for and on their behalf." (The pleadings originally made two corporations by the name of Champlin Refining Company, one a Maine and one a New Mexico corporation, defendants, but by stipulation it was agreed that the New Mexico corporation was the successor to the Maine corporation, and that thereafter "the pleadings, orders and judgments * * * shall treat simply the Champlin Refining Company, a corporation.")

The answer of the defendant denies generally and specifically the allegations of plaintiff's amended petition. The answer further alleges:

"That the information filed with the county judge of Noble county, Okla., charging the said Frank LeForce with the commission of a certain offense against the criminal laws of the state of Oklahoma, to wit: with having disposed of certain oats, the same being oats on which the defendant held a mortgage in the sum of $165, and that the said Frank LeForce, without the permission of this defendant, did dispose of said oats, intending to cheat and defraud this defendant in violation of the laws of the state of Oklahoma, was true and that a full and true disclosure of the facts supporting such information was honestly and in good faith laid before the duly elected, qualified and acting county attorney in and for the county of Noble and state of Oklahoma, and that the said county attorney did advise this defendant that in his opinion the offense set forth in said information had been committed and warranted the prosecution of the said Frank LeForce and thereupon and relying and acting upon such advice, the said information was signed and filed."

The answer specifically denies hatred or malice and pleads the truth of the charges contained in the information.

It is to be noted that the answer of the defendant is unverified, and hence, under the provisions of section 220, O. S. 1931, the agency of H. W. Carey is admitted.

Plaintiff replied to the answer by denying all allegations of the answer inconsistent with those of the amended petition.

All acts complained of in the amended petition were those of H. W. Carey, who was made codefendant in the case with the Champlin Refining Company and filed substantially the same answer as was filed by the Champlin Refining Company. The jury returned a verdict in favor of the plaintiff and against the defendant Champlin Refining Company only. There was apparently no decision as to the issue between the plaintiff and H. W. Carey, who, under the facts and circumstances of the case, would be liable if the Champlin Refining Company were liable. However, no point is made by either party to this appeal because of this inconsistency in the verdict.

The issues were submitted to the jury on the testimony offered on behalf of the plaintiff, the defendant offering no evidence on its behalf.

The record in the criminal case, introduced in evidence, shows that the complaint was filed before the county judge of Noble county August 3, 1929, and bears approval of the county attorney. The return on the warrant shows the arrest of the defendant August 28, 1929. Information was filed in the district court September 16, 1929, at which time plaintiff, defendant in that action, filed a motion to dismiss because of insufficiency of evidence at the preliminary hearing. The case came on for trial October 5, 1929, when it was dismissed on motion of the county attorney, with the approval of the court.

The record of the county court in these criminal proceedings was incomplete in that it failed to show that the county judge, acting as committing magistrate, had made any indorsement on the complaint, as provided by section 2806, O. S. 1931, finding that there was sufficient evidence to believe the defendant, plaintiff in the civil action, guilty of the offense charged. Neither was there any commitment, as provided by section 2810, O. S. 1931.

During the trial of the case at bar, the plaintiff was permitted by the district court to withdraw the files in the criminal action, and these omissions from the record were sought to be supplied by nunc pro tunc order of the county judge, who was the same person as conducted the preliminary hearing. Timely objections were made by the plaintiff to this procedure and as to the competency of the record as amended by the nunc pro tunc order. These objections were overruled and exceptions allowed.

There was also introduced at the trial a motion which the plaintiff had filed in the criminal proceedings to quash the information based on the insufficiency of the evidence at the preliminary hearing. Attached

to this motion was the testimony of the two witnesses who testified before the committing magistrate, one of whom was the agent, Carey, and the other the plaintiff's father-in-law, John R. Beck, Sr.

Neither the record in the criminal case nor the testimony in the case at bar shows a ruling on the motion to quash. Presumably, it was overruled before the case came on for trial. If such were the case, it would constitute an adjudication by the district court that the evidence taken at the preliminary hearing, and attached to the motion, was sufficient to show probable cause of guilt.

Plaintiff at the trial did not dispute the giving of the note and mortgage and did not claim that anything had been paid on the note. He contended, however, that a full disclosure of all the facts had not been made to the county attorney, in that Carey had failed to tell him that plaintiff occupied land on which the mortgaged oat crop was grown under departmental Indian lease, giving a lien to the lessors for the payment of rent. In this connection, a letter from the county attorney was introduced, reading as follows:

"September 13, 1929

"Mr. H. W. Carey
"Champlin Refining Company
"Enid, Oklahoma

"Dear Sir:    Re: State vs. Frank LeForce

"I have decided to dismiss the above-entitled case. If there was a Government lease on that land, the lease would come in ahead of your chattel mortgage, and if there was not enough to pay the lease money, then your rights, or the rights of the Champlin Co. would not be injured.

"Furthermore, it seems John R. Beck, Sr. did most of the disposing of that crop. and we can't blame Frank very much for keeping his stock alive. With the law against us, and the sympathy of the jury in Frank's favor (he hasn't been able to make bond), there is not much chance of conviction.

"Very truly yours,
"E. S. Bowles,
"ESB/EB          County Attorney."

The former county attorney testified that he would not have approved the complaint had he known of the prior lien under the departmental lease. In this respect his testimony is inconsistent with the fact that he continued prosecution after the preliminary hearing, for the evidence at the hearing given by plaintiff's father-in-law clearly disclosed to the committing magistrate and the county attorney, who participated at the hearing, that the oats were produced under such a lease.

It was conceded that all the oats were removed or disposed of. The plaintiff testified that he had fed about 15 bushels to his livestock. The rest of the oats had been removed by his father-in-law, John R. Beck, Sr., and the plaintiff, in his testimony, claimed that this was done while he was in Osage county harvesting a crop of alfalfa from a farm he had there, and that the removal by his father-in-law was without his knowledge or consent. He conceded that he made no protest after he discovered the fact that the oats had been removed.

The debt secured by the mortgage was a renewal of a debt that had been secured under a mortgage given by the plaintiff to the defendant the previous year on a corn crop. He admitted that he had disposed of the corn crop without the defendant's consent, and that Carey, representing the defendant, had taken the new mortgage to secure the same debt. The new mortgage was the one on which the prosecution was based.

At the close of the testimony, the defendant demurred to the evidence. The demurrer was overruled and exception allowed. The defendant then requested instruction directing a verdict in its favor, which was denied and exception allowed. Each of these rulings is assigned as error and presented by the defendant in its brief. They present substantially the same issue and will be considered together.

It is the holding of the courts of this country generally that prosecution for criminal offenses should not be discouraged through permitting the maintenance of actions for malicious prosecution on flimsy evidence. It is said with sound reason:

"As applied to the original proceedings, a malicious prosecution has been defined as one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure. The action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage." 18 R. C. L. 11.

This court has held, in line with the gen-

eral doctrine announced, quoting from the third paragraph of the syllabus in the case of Dunnington v. Loeser, 48 Okla. 636, 149 P. 1161, 150 P. 874:

"To adopt a lax rule, favorable to actions for malicious prosecution, is to open the door in such actions, and to close the door to prosecutions, to turn society over to the lawless, and to create a dread on the part of anyone who dared to prosecute."

In the body of the opinion in the above case, this court says:

" 'Actions for malicious prosecution have never been favored in law.' and we hardly think we have reached that guileless age in which we can afford to take down the bars."

If the evidence in this case were sufficient, taking into consideration the inferences and conclusions which may reasonably and logically be drawn therefrom to support the burden of proof, then the demurrer to the evidence was properly overruled and the request for peremptory instruction was properly denied.

But has plaintiff established his case, even if we concede to him the benefit of the inferences and presumptions to which he is entitled? Having admitted the disposal of at least a part of the crop without the mortgagee's consent, can he successfully contend that there was an absence of probable cause by reason of the fact that the lease gave to the lessors a lien superior to the mortgage?

The criminal action, which is the basis of the case at bar, was brought under the provisions of section 1946, O. S. 1931, which provides:

"Any mortgagor of personal property, or his legal representative, who, while such mortgage remains in force and unsatisfied, conceals, sells, or in any manner disposes of such property, or any part thereof, or removes such property, or any part thereof, beyond the limits of the county, or materially injures or willfully destroys such property, or any part thereof, without the written consent of the holder of such mortgage, shall be deemed guilty of a felony," etc.

The question naturally presents itself as to whether or not, under the circumstances then existing, the fact that at least 15 bushels of the oats had been fed by the plaintiff to his livestock and that all of the oats had been removed, all without the consent of the mortgagee, coupled with the further fact that the plaintiff, the previous year, had disposed of a crop on which the defendant then held a mortgage, gives probable cause, as a matter of law, for bringing the prosecution. The plaintiff's own testimony established these circumstances at the time the complaint was filed before the county judge.

It has been held in a number of cases by this court that in a suit for malicious prosecution, where the facts are undisputed, the question of whether or not the plaintiff has shown want of probable cause is one for the court rather than for the jury. It is said in the case of Bryan v. Lee, 123 Okla. 22, 252 P. 2:

"Plaintiff's contention upon the element of probable cause is, in substance and effect, that he should have been permitted to argue this question to the jury, and that the jury, instead of the court, should have determined the existence or nonexistence of probable cause in the trespass prosecution. In this case the trial court sustained a demurrer to plaintiff's evidence, so that the facts upon which he relied to show absence of probable cause are undisputed. Under such circumstances, it has been the uniform holding of this court that, upon undisputed facts, the presence or absence of probable cause is a question of law for determination by the court. Dunnington v. Loeser, 48 Okla. 636, 149 P. 1161, 150 P. 874; Robberson v. Gibson, 62 Okla. 306, 162 P. 1120; Hopkins v. Stites, 70 Okla. 177, 173 P. 449; First State Bank v. Denton, 82 Okla. 137, 198 P. 874.

"It has also been repeatedly held that a verdict of acquittal on a criminal charge does not tend to show absence of probable cause in commencing the prosecution. Lindsey v. Couch, 22 Okla. 4, 98 P. 973, 18 Ann. Cas. 60; El Reno Gas & Elec. Co. v. Spurgeon, 30 Okla. 88, 118 P. 397; Central Light & Fuel Co. v. Tyron, 42 Okla. 86, 140 P. 1151."

The case of Bryan v. Lee, supra, is cited with approval in the case of Haffner v. First National Bank of Seiling, 152 Okla. 90, 3 P. (2d) 835. It also quotes from the case of Thelma Oil & Gas Co. v. Sinclair Gulf Oil Co., 97 Okla. 5, 222 P. 686, the following:

"And in the case of Thelma Oil & Gas Co. v. Sinclair Gulf Oil Co. et al., supra, in the second paragraph of the syllabus, this court said: 'A demurrer to the evidence admits all of the facts which the evidence reasonably tends to establish, and all the inferences and conclusions which may reasonably be drawn therefrom; but, where the evidence introduced is insufficient to sustain a verdict or judgment in favor of the party introducing the evidence, it is not error for the court to sustain a demurrer to such evidence.' "

Carey, agent for the defendant, disclosed all of these facts to the county attorney at the time the complaint was approved and warrant issued. It does not appear that he

disclosed the fact that the plaintiff produced the crop under a lease which reserved a lien to the landlord. Plaintiff contends, in effect, that, even though these circumstances existed, he has sufficiently established a want of probable cause. He bases his contention upon three grounds, which we will consider:

(a) In his brief plaintiff states:

"Under the rule of law relating to prosecution for malicious prosecution, the dismissal of the criminal action against Mr. Le Force by the county attorney during the progress of the trial is prima facie evidence of probable cause." Citing State ex rel. Mann v. Trimble (Mo.) 232 S. W. 100; Hightower v. Union Savings & Trust Company, 88 Wash. 179, 152 P. 1015, Ann. Cas. 1918A, 489.

He has not cited, but we have also considered, the following cases from this court tending to support his position: Pierce Oil Corporation v. Mitchell, 99 Okla. 148, 225 P. 937; Empire Oil & Refining Co. v. Cambron, 172 Okla. 202, 44 P. (2d) 972. In so far as the cases cited by plaintiff are concerned, they are decidedly against the weight of authority, as appears from the large number of cases cited in the following notes: 64 L. R. A. 474, at 486; 24 A. L. R. 261, at 280; 94 A. L. R. 744, at 749. In the second of the notes above referred to, the annotator states:

"An abandonment of the prosecution by the complaining witness, a discontinuance at the instance of the prosecuting attorney, a dismissal by the magistrate or court without a hearing of all the evidence, and other similar terminations of a criminal proceeding whereon an action of malicious prosecution has been based, have been variously spoken of as constituting no evidence of want of probable cause, raising no presumption thereof, establishing no prima facie case of lack of probable cause, being insufficient to prove want of probable cause, etc. The weight of authority is in this direction."

In the two cases we have last cited from this court, the dismissal occurred at the preliminary hearing and not after the defendant had been bound over by the committing magistrate for trial in the district court. All of the decisions cited above are distinguishable in that the defendant was bound over by the committing magistrate, who found that there was a crime committed, and that the plaintiff (defendant in that proceeding) was probably guilty of the offense. This action on the part of the committing magistrate is generally held to be prima facie evidence of probable cause. We quote the following from 38 C. J. 411,

which is supported by a great many decisions from the federal and state courts:

"While there is some authority to the contrary, it has been generally held that, where the result of the preliminary examination before a magistrate is unfavorable to accused and he is held or committed by the magistrate, this is prima facie but not conclusive evidence of probable cause."

But, even if there were a presumption of want of probable cause by reason of the dismissal of the charge by the county attorney in the district court, nevertheless the testimony of the plaintiff makes, in our judgment, affirmative proof that probable cause existed.

This court said, in the case of Mann v. Townsley, 99 Okla. 220, 226 P. 554:

"The admissions of the plaintiff constitute probable cause for the action of the defendant in causing the complaint to be filed against the plaintiff. El Reno Gas & Elec. Co. v. Spurgeon, 30 Okla. 88, 118 P. 397; Shaw v. Cross, 83 Okla. 273, 201 P. 811; Kable v. Carey, 135 Ark. 137, 204 S. W. 748, 12 A. L. R. 1227; Lewis v. Goldman, 241 Mass. 577, 136 N. E. 67, 24 A. L. R. 260."

(b) Plaintiff also states in his brief:

"Since the early case of Neal v. State, 14 Okla. Cr. 121, 168 P. 247, the law in this state is so well established that, where the person having the prior lien on mortgaged property takes possession of the mortgaged property, that the second mortgagee is not entitled to prosecute the mortgagor under the criminal statute for the wrongful and illegal disposition of mortgaged property."

It is conceded that plaintiff has made a correct statement of the law as announced by the Neal Case, and also as announced by the case of Thompson v. State, 20 Okla. Cr. 211, 201 P. 1004. Those cases recognize the fact that, when one takes a second mortgage, his rights are subordinated to those of the first lienholder. In other words, the first mortgagee is not to be embarrassed in any way by the taking of a second mortgage, and may foreclose his lien either by forced sale or at private sale by agreement between the owner and the first mortgagee.

Here, however, we have a very different case, for there was no pretext that the removal and disposal of the oat crop was in any way beneficial to the lessor, who held the first lien on the crop.

True, John R. Beck, Sr., father-in-law of the plaintiff, made some claim of right in his testimony, in the trial of this case and at the preliminary hearing on the criminal charge that, because he was a surety on

the lease under which plaintiff held the land, he could take possession of the crop for his protection. A surety, however, to be subrogated, must first pay his principal's obligation (Johnson v. Gillette, 66 Okla. 308, 168 P. 1031), and there was no suggestion that either plaintiff or the sureties paid any rental due to the lessors.

(c) Plaintiff contends that the defendant's agent, Carey, showed bad faith in not disclosing all the facts to the county attorney. It is claimed that he concealed the fact relating to the departmental lease and the lien created thereunder. The county attorney stated that he would not have approved the complaint had he known about the prior lien, although he states he had not looked up the law on the question, but had been guided by the opinion of plaintiff's counsel when he was representing him in the criminal case. As we have pointed out, he was somewhat inconsistent in this position, since, at the preliminary hearing, the facts clearly disclose that he continued the prosecution, filing information in the district court and evidently resisting the motion to quash on the ground that the testimony at the preliminary hearing was insufficient to support the information.

However, defendant relies not only on the fact that its agent disclosed all the facts to the county attorney, but on the ground that there was probable cause justifying the prosecution, and, as we have stated, we are of the opinion that the defendant is right in this position.

Counsel for defendant assign and argue other issues, which they assert entitle them to a reversal of the case. Among other grounds for reversal, they assert: (a) That incompetent evidence was introduced at the trial; (b) that the trial court erroneously permitted the correction of the record in the criminal action; (c) that proper instructions requested were refused; and (d) erroneous instructions were given.

In view of the position we have taken as to the sufficiency of the evidence to support the verdict and judgment, it is unnecessary to discuss the argument on these assignments.

The cause is reversed, with instructions to the trial court to enter judgment in favor of the Champlin Refining Company.

The Supreme Court acknowledges the aid of Attorneys B. C. Conner, Y. P. Broome, and Joe Chambers in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. B. C. Conner and approved by Mr. Y. P. Broome and Mr. Joe Chambers, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.