Star E. AMES, Plaintiff in Error,

v.

J. W. (Dick) STRAIN, and National Surety Corporation, a Corporation, Defendants in Error.

No. 37016.

Supreme Court of Oklahoma.

July 17, 1956.

Rehearing Denied Sept. 25, 1956.

Sid White, Oklahoma City, for plaintiff in error.

Looney, Watts, Looney, Welch, Hamill & Nichols, Anna B. Otter, Oklahoma City, for defendant in error National Surety Corp.

Cargill & Cargill, Oklahoma City, for defendant in error J. W. (Dick) Strain.

BLACKBIRD, Justice.

This appeal involves a damage suit, which, as its issues were finally joined for trial, was for false, or "malicious", arrest and imprisonment. It was instituted by plaintiff in error, as plaintiff, against defendants in error, as defendants, who were the then Sheriff of Oklahoma County, Oklahoma, and the alleged surety on his official bond. A third defendant, Cities Service Oil Company, is not involved herein because of the action's dismissal as to it before trial. Our further reference to the parties hereto will be by their trial court designations.

For many years plaintiff has been the owner of royalty under a producing oil and gas lease, apparently near, or adjoining, his home in southeastern Oklahoma City. For twenty years he has believed that one or more oil companies were "stealing" oil through pipe lines to said lease.

Records introduced in this case indicate that on September 17, 1947, certain small buildings known as "meter houses" and "dog houses" of Phillips Petroleum Company, located on land near said City, were broken into and burglarized of meter charts and other personal property. One Larrison was first arrested for the crime and signed a written statement, on the tenth day after it was committed, confessing to having broken into, and stolen from, some of such places, "reports" on various wells in the general vicinity of plaintiff's home. In said statement, which was witnessed by the defendant Sheriff's Deputy, Noah Richmond, among others, Larrison, implicated plaintiff by representing that he had met him about three weeks previously, that plaintiff had asked him to get the reports

and promised that he would give Larrison " * * * part of the money * * *" they " * * * made out of it." Larrison further disclosed that plaintiff had " * * * all the rest of the reports * * *" other than those the officers had recovered from him.

Thereafter, on October 4, 1947, upon presentation to him of a "Preliminary Information" charging plaintiff and Larrison jointly with the crime of "Burglary in the Second Degree", subscribed and sworn to by Deputy Richmond, Justice of the Peace Evert Crismore issued a warrant for plaintiff's arrest, and, with said warrant, said deputy arrested him at his residence on the same day. At the preliminary hearing held approximately two months later by another Justice of the Peace, Ellmore Pinnick, plaintiff was bound over for trial in the District Court on the aforesaid burglary charge. More than a year later, or in February, 1949, the County Attorney of Oklahoma County received a letter from one, W. S. Owen, who apparently had made an investigation of this case and another one for one of the oil companies involved. In said letter, Owen expressed his belief, after such investigation, that the State would be unable to convict plaintiff on the aforesaid charge, and gave his assent to the dismissal of the two cases as to plaintiff. Thereupon, the aforesaid criminal action then pending in the District Court was ordered dismissed as to plaintiff, upon a motion filed by the County Attorney setting forth, as reasons therefor, the request of Mr. Owen, and the belief that the evidence was insufficient.

Thereafter, plaintiff instituted the present action alleging, in his Second Amended Petition, facts showing that the defendant Sheriff, through his deputy, held him a prisoner in jail five hours from 6:00 o'clock to 11:00 o'clock the night of October 4, 1947, "without benefit of bail" before he " * * * was arraigned and permitted to make bail * * *". He further alleged, in part, that said defendant and his deputies and agents "did not act in good faith" and that his arrest and imprisonment were

"* * * made falsely, maliciously, * *" and not in the discharge of any official duty, but for the purpose of deterring him from prosecuting suit in a controversy he was then having with Cities Service Oil Company "looking to" his recovery "from said company for oil taken from his premises and not accounted for." The defendant Sheriff answered with a general denial and special denial that he was guilty of any malicious act or omission. He further alleged, in substance, that the criminal action against plaintiff was filed by the County Attorney without malice and upon evidence showing probable cause for so doing; and that, if plaintiff was arrested and placed in jail, same was done in a lawful manner after a justice of the peace had issued a warrant therefor upon reasonable and probable cause for so doing.

Upon the issues joined by these pleadings, and others unnecessary to mention, the cause came on for trial by a jury. At the close of plaintiff's evidence, and without defendants' introduction of anything but documentary evidence, the trial court sustained both defendants' separate demurrers to the evidence and discharged the jury on the ground that there was nothing for them to decide, since plaintiff's evidence had failed to establish either malice or "lack" of probable cause "upon the part of the officer * * *". Plaintiff's present appeal was perfected after entry of said court's judgment sustaining said demurrers and a subsequent order overruling his motion for a new trial.

Because plaintiff's brief is overburdened and encumbered with, and consists almost entirely of, rhetorical declamation, it is rather difficult to discern the precise respects in which he thinks the trial court erred. As a preliminary to what he calls his "Argument", however, he sets forth two quotations. One is from Vol. 34, of American Jurisprudence, and concerns proof of malice. The other is Title 21, O.S.A.(O.S.1951) § 534, which makes it a misdemeanor for a public officer, after having arrested anyone on a criminal charge, to wilfully delay taking him before "a magistrate having jurisdiction to take his examination * * *." Plaintiff makes no effort to demonstrate in what respects, if any, his arrest by defendant's deputy, Noah Richmond, was unlawful. As hereinbefore indicated the arrest was made with a warrant, which, as far as anyone contends, was duly and regularly issued by a duly elected, qualified and acting justice of the peace. This being true, said deputy's motive in arresting plaintiff, even if there had been any evidence tending to show said officer had one, other than that of doing his official duty, was immaterial. See 4 Am.Jur., Arrest, sec. 122, Annotations 21 A.L.R.2d 643, 649; 35 C.J.S., False Imprisonment, § 27; Restatement Of The Law, Torts, sec. 122. See also the interesting discussion in Brown v. Chadsey, 39 Barb., N.Y., 253, wherein it is noted that: "The action of trespass for false imprisonment is for having done what upon the statement of it is manifestly illegal; * * *". Remembering that the way one of the hereinbefore partially quoted allegations of plaintiff's petition was phrased, the adverb "maliciously" was used in reference to, or as modifying, the word "arrest", as well as "imprisonment", we note in the cited case (following the quoted pronouncement) the court also said: "* * the ground of the action for a *malicious* arrest or prosecution is the procuring to be done what upon the face is or may be a legal act, from malicious motives and without probable cause." (Emphasis ours.) And at page 662 of the above-cited Annotation, the author says:

"If the complaint and supporting evidence contain sufficient facts to present a judicial question to the magistrate as to whether they show a certain criminal offense, and that question is decided by the magistrate in favor of issuing the requested warrant, the prosecuting complainant is protected by the decision. *This proposition is qualified by many of the opin-*

*ions which impliedly recognize that if the defendant is shown to have presented the facts to the justice dishonestly, or to have been guilty of malice and acted without probable cause, the factors which impose a liability for malicious prosecution will operate against him."* (Emphasis ours.)

Here, defendant's deputy was more than just the arresting officer—he was the complaining witness; but, there was no evidence of malice or want of probable cause. Although, in contradiction of Larrison's written statement and oral testimony to the effect that plaintiff asked him to get the aforesaid reports and that he promised him monetary remuneration for doing so, plaintiff testified he hadn't even talked to Larrison about getting them, on cross-examination he admitted that Larrison brought similar records to his house; and that the officers found them when they came to arrest him. During the earlier part of his cross-examination, plaintiff testified that Larrison left the records at his house "because he didn't want to carry them down town." Later in his cross-examination, he admitted that he looked "through the top" of the records, and, when asked if he did this to see if the records would be helpful to determine if "they" (the oil companies) were stealing oil from him, he answered: "Well, no doubt in the world they would have been helpful." However, it is unnecessary to dwell on the evidence in this connection, because of the undisputed proof that, at plaintiff's preliminary hearing before the justice of the peace, he was bound over for trial in the district court on the burglary charges. This was prima facie evidence that plaintiff's arrest was with probable cause and without malice. See Champlin Refining Co. v. LeForce, 176 Okl. 48, 54 P.2d 190, 194; Brown v. Meier & Frank Co., 160 Or. 608, 86 P.2d 79; Mudge v. State, Ct.Cl., 45 N.Y.S.2d 896; Schultz v. Greenwood Cemetery, 190 N.Y. 276, 83 N.E. 41. There was nothing in the present case sufficient to refute this.

■ However, even though plaintiff's arrest was lawful, he may have a cause of action for false imprisonment, if he was unlawfully detained after the arrest—a fact which the trial court seems to have overlooked. See 35 C.J.S., False Imprisonment, § 4. Title 22, O.S.1951 § 181, requires that the defendant, in all cases, be taken before the magistrate without unnecessary delay. In this connection see Benton v. State, 86 Okl.Cr. 137, 190 P.2d 168 and State v. Lumley, 83 Okl.Cr. 430, 178 P.2d 629, 637; 22 Am.Jur., False Imprisonment, sec. 20, and the cases cited in the Annotations at 46 A.L.R. 806, including Schreiner v. Hutter, 104 Neb. 539, 177 N. W. 826, which held:

"A warrant does not protect a sheriff from liability for wrongful and unauthorized acts committed by him in connection with its execution; and where, after making an arrest, he delays for an unreasonable length of time in bringing his prisoner before the magistrate, and such delay is through his indifference to duty, or through willfulness, he will be liable in damages as for false imprisonment."

In the Annotations, supra, (p. 809) it is said:

"Where the original arrest is legal but the subsequent detention is unreasonable, some cases hold an officer to be a trespasser ab initio, and liable in an action of false imprisonment for the entire time. (Citing cases.)"

In Dragna v. White, 45 Cal.2d 469, 289 P.2d 428, 431, it is said:

"We are satisfied that the better rule is that where the arrest is lawful, subsequent unreasonable delay in taking the person before a magistrate will not affect the legality of the arrest, although it will subject the offending person to liability for so much of the imprisonment as occurs after the period of necessary or reasonable delay. [Citing cases.]"

Here, according to plaintiff's testimony, his arrest at home occurred "around 5:30", whereupon he was placed in the officer's automobile, and, instead of his being taken directly to the sheriff's office or to a justice of the peace, the auto was driven to the Stork Club where "they (the officers) were closing a slot machine", and where they kept him about thirty minutes before "they brought me down to the sheriff's office." He further testified that he thought they arrived at the latter place "around 6:30". (The "Jail Record", introduced by defendants, shows he was booked in at "6:20 P. M.") Plaintiff further testified that he was taken directly from the sheriff's office "upstairs" and locked up in a cell, and that, though he told the officer he wanted to be arraigned and given an opportunity to make bond, he was not released from jail until "around 12:30 that night." (The aforementioned jail record shows he made bond at "11:20.") The Under-Sheriff testified that his attention was called to the fact that plaintiff was in jail at 6:00 o'clock that day; that he was not arraigned soon afterward because no court was open; that Justice of the Peace Evert Crismore's office was called, but it was not open; that, after telephoning Judge Dick Jones of the Criminal Court of Appeals, arrangements were made to have plaintiff arraigned before Justice of the Peace Pinnick, which was done about two hours later. Figures on the jail record, as explained by the Under-Sheriff, indicate that he was arraigned at 11:15 P.M. Whether or not this lapse of five hours, or more, from the time plaintiff was taken into custody until he was taken before Justice of the Peace Pinnick and arraigned and given the opportunity to make bond, was a necessary or reasonable delay was the question to be decided.

■ Defense counsel recognize that "what is a reasonable time depends upon the facts of each case", but they say that where there is no conflict in the evidence on this point, the question is one of law for the court, citing Clements v. Canon,

170 Okl. 340, 40 P.2d 640. In this connection, see also Kaufman v. Brown, Cal. App., 209 P.2d 156; Brown v. Meier & Co., supra, and the Annotations beginning at 79 A.L.R. 13. Here, the defendant sought to justify plaintiff's detention for the above-described period, with evidence tending to show that at the time of day when plaintiff, after his arrest, was taken to the sheriff's office, the peace justices' offices were closed for the day; and that bona fide efforts were made to contact a magistrate for plaintiff's arraignment, but that none were successful until Peace Justice Pinnick was reached. Said evidence tended to show that the delay was "necessary", rather than "unnecessary". In this connection see Arnold v. Steeves, 10 Wend., N.Y., 514, which held a constable had a right to detain defendant a reasonable time while making a bona fide effort to find a justice to hear the cause; and Kent v. Miles, 65 Vt. 582, 27 A. 194, 196, where the court said that the defendant officer, upon arriving at the court's residence city and not finding it in session, had a right to detain plaintiff (his prisoner) "a reasonable time to ascertain and determine whether he should be able to deliver him to the court." In the present case, if there had been no stop at the Stork Club and plaintiff's arrival at the sheriff's office, in the custody of the arresting officer, had occurred as early as 6:00 o'clock P.M.— or even a few minutes before—there is no evidence that the office of any examining magistrate would have been open at that time of day, nor was there any proof that it would have been possible to facilitate plaintiff's arraignment before any such magistrate any earlier than was done. In view of defendants' evidence to the effect that plaintiff's detention, and the delay in taking him before a magistrate, which occurred, was a necessary or unavoidable one, the burden then shifted to plaintiff to refute this; but he did not do so. See 22 Am.Jur., False Imprisonment, sec. 107, at Note 7. Consequently there was no material conflict in the evidence on this fea-

ture of the case, and the trial court, under the rule above referred to, properly sustained defendants' demurrers to the evidence and dismissed the case. Its said ruling and judgment is therefore affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN and HALLEY, JJ., concur.