Alfred JAMES, Plaintiff In Error,

v.

SOUTHWESTERN INSURANCE COMPANY, a corporation; National Automobile Theft Bureau, a National Association; M. L. Rear, James Dozier and Chester Stringer, Defendants In Error.

No. 38444.

Supreme Court of Oklahoma.

July 6, 1960.

Rehearing Denied Aug. 2, 1960.

Elliott Howe, James Wm. Brown, A. D. Mason, Tulsa, for plaintiff in error.

Hudson, Hudson, Wheaton & Kyle, Rucker, Tabor & Cox, Tulsa, Mac Q. Williamson, Atty. Gen., by Owen J. Watts, Asst. Atty. Gen., for defendants in error.

JOHNSON, Justice.

Alfred James sued the Southwestern Insurance Company, a corporation, National Automobile Theft Bureau, a national association, M. L. Rear, James Dozier and Chester Stringer, in the District Court of Tulsa County, Oklahoma, for damages that he allegedly suffered by reason of his false arrest and false imprisonment by the defendants.

A jury was empaneled, and the plaintiff adduced his evidence and rested. The defendants (each) interposed demurrers thereto on the ground that the evidence was insufficient to constitute a cause of action in favor of the plaintiff against the defendants. The demurrers were sustained, and the action was dismissed, resulting in this appeal.

Plaintiff's petition alleged in substance that the defendants, without making full disclosure of all the facts to the County Attorney of Tulsa County, Oklahoma, caused his arrest and imprisonment by filing with the county attorney an affidavit and preliminary information, sworn to by Chester V. Stringer, charging the plaintiff with the crime of setting fire to and burning a certain described automobile; that by reason of such false charge caused a warrant to issue for the arrest of plaintiff; that in so doing the defendants unlawfully, maliciously and without probable cause caused his arrest and imprisonment and the eventual district court jury trial wherein he was acquitted; that the defendants had made a purported investigation of the burning of the automobile and had represented themselves as being members of the Federal Bureau of Investigation and coerced and intimidated plaintiff into signing a confession of the crime which he wouldn't have signed had he been advised of his constitutional rights, all of which resulted in the plaintiff's alleged damages.

Defendants denied generally all the allegations. Defendant Stringer admitted that he was an employee of the Department of Public Safety of the State of Oklahoma, and that he signed an affidavit and complaint against the plaintiff charging him with violation of Title 21 O.S.1951 § 1764, but not until after the plaintiff had signed a confession of the crime; that they did not use force, fear or durress to get him to sign the confession, and that the defendant did not cause a warrant to be issued for the

arrest of the plaintiff maliciously, unlawfully or without just cause; that he was not at any time an agent or acted as such for the defendant Southwestern Insurance Company.

The confession referred to in the foregoing pleadings, and hereinafter referred to in the résumé of the evidence, reads as follows:

"August 2, 1955
"Sheriffs Office
"Tulsa, Oklahoma

"I, Alfred James, am 18 years of age, and I live at Tahlequah, Oklahoma. I am making this statement of my own free will and accord, without any threats or promises being made to me, and the statement is being made to Chester Stringer, who has identified himself to me as an Agent for the Oklahoma Bureau of Investigation. I have been advised that I do not have to make this statement and that if I do, it can be used against me in any prosecution or proceedings.

"In April of 1955 I purchased a 1952 Ford Tudor from the Campbell Motor Co. of Tahlequah, Oklahoma. I paid $1400.00 or a little more after the carrying charges and insurance was added on. I traded in a 1940 Ford and mortgaged eight cows. My payments were a little over $81.00 per month on the car. I made three payments and was not behind at the time of the fire.

"After getting married I decided to get rid of this car and purchase a cheaper one and on Sunday, July 17, 1955, I decided to take the car out and burn it. I left our apartment in Tulsa by myself about 10 o'clock and drove southeast of Tulsa to a spot that looked deserted and set the seat covers on fire with a match. This was a one mile east and a little south of Sontag's Grocery Store at 21st and Memorial Road. After the fire got going good a man came along in a pickup truck. I don't know his name but he works at the fire station in Waggoner. He stopped and

we watched the car burn and then he pushed it out of the road with his truck and then we came into Tulsa and called the Highway Patrol and then he took me home. I never did tell my wife that this fire was not an accident.

"I now wish to state that the statement given to Mr. Dozier who I know to be an adjuster *was untrue*, and this statement is the truth.

"Witness /s/ Chester Stringer
"Witness /s/ M. L. Rear

"I have read the above and it is true
/s/ Alfred James"

NOTE: The statement "I have read the above and it is true" is admittedly the handwriting of the plaintiff.

In stating the nature of the action on plaintiff in error's brief as required by rule of this Court, the action was designated "Action for false arrest and false imprisonment," and the assignments of error are presented and argued under the one heading:

"Did plaintiff prove prima facie that he was arrested falsely and was thereafter falsely imprisoned?"

Though side issues or factors which tend to impose liability for malicious prosecution are injected into the case, we shall confine our discussion and decision to the plaintiff's single issue of whether he proved prima facie that he was falsely arrested and falsely imprisoned.

The evidence discloses that in March or April of 1955 plaintiff purchased a 1952 Ford automobile; that on July 17, 1955, in the daytime, while driving the Ford automobile on a highway near Tulsa, he noticed the car was on fire, and that Mr. Dale, one of his witnesses, but who at the time of the fire was a stranger to him, joined him while the car was burning. He left the car at the scene where it had burned and presumably the highway patrol moved the car to Paul's Garage in Tulsa; that he was not behind in the payments on the car at the time of the fire; that the insurance company up to the time of the trial had not

paid the insurance claim incurred by reason of the burned automobile.

He further testified that he met Mr. Dozier for the first time on August 22, 1955, at Chic Norton Buick Company in Tulsa in response to a note that Mr. Dozier had left with his mother requesting the meeting; that he met Mr. Dozier, who was the agent for Southwestern Insurance Company, about 9:30 a. m.; that they talked about an hour; that he was told by Mr. Dozier that two FBI men wanted to talk to him; that Mr. Dozier introduced him to Chester Stringer and M. L. Rear, following Dozier's comment regarding them being members of the FBI; that he talked with these three men until approximately eleven o'clock, when he left with Rear and Stringer in their car and went to Paul's Garage where the burned car was inspected, and then they started to the place on the highway where the automobile was burned. His further testimony was that Rear and Stringer threatened him and his wife with prison terms, and that he was nervous and scared and unadvised, and that he confessed to burning the automobile, whereupon they took him to the county attorney's office where he talked to Mr. Simms, an assistant county attorney, and told him that his confession was true, and he signed the written confession in the presence of the county attorney. After he had signed the confession, he testified that at his request he was taken by Mr. Rear and a deputy sheriff to see his father, and that in the presence of Mr. Rear he told his father that he burned his car. His father returned with him, the officer and Mr. Rear to the county court house. Thereupon he was charged with the crime of burning the automobile and placed in jail, where he remained for about an hour and was bailed out; that he paid $100 for bail bond and $2,500 attorney's fee and was thereafter upon preliminary hearing bound over for trial in the district court and tried there on a charge of arson or burning his automobile and found not guilty by a jury.

Plaintiff further testified that Rear and Stringer told him to stay in the car when they were at Paul's Garage where the burned car was examined or inspected. Mr. Stringer was admittedly an agent of the Oklahoma Bureau of Investigation, a branch of the Department of Public Safety of the State of Oklahoma, and had the usual authority of an officer of the law to make arrests and investigations. It was also admitted that Mr. M. L. Rear was an agent of the National Automobile Theft Bureau, and that Mr. Dozier was the agent of Southwestern Insurance Company which carried the policy on the burned automobile.

■ Obviously, plaintiff's arrest occurred by virtue of a lawful warrant duly issued after he had signed a written confession that he had committed a felony and after he talked to Mr. Simms, the assistant county attorney, and told him that his confession was true. He testified that he was present in the county attorney's office when the information charging him with burning his car was drawn, and that he knew it was being drawn, and he also knew upon the filing of that information a warrant would be issued for his arrest. He talked with Mr. Simms about being arrested and discussed whether he would be put in jail or given an opportunity to make bond. Mr. Simms explained all that to him, yet he never did tell Mr. Simms that his confession was untrue. He did not tell the examining magistrate or the judge before whom he was arraigned that his confession was not true.

■ The mere fact that Mr. Stringer, an employee of the Oklahoma Crime Bureau, signed the information does not help plaintiff's case. It must be remembered that before the information was drawn and the warrant issued, plaintiff conferred with Mr. Simms, the assistant county attorney, whose duty it was to determine whether a crime had been committed. Having convinced the assistant county attorney that a crime had been committed, he cannot now complain of the warrant issued for his arrest. The warrant issued was, under these facts, lawful.

■ There is no liability for an arrest and imprisonment pursuant to a lawful warrant. 4 Am.Jur., Arrest, Sec. 122.

In Ames v. Strain, Okl., 301 P.2d 641, plaintiff's action was for damages for alleged false arrest and imprisonment. The trial court sustained defendant's demurrers to the evidence. In that case the arrest was also made pursuant to a warrant duly issued upon a criminal complaint. This court held that where the arrest was made with a warrant duly issued, the motive of the arresting officer in arresting plaintiff, other than that of doing his official duties, was immaterial. In this connection the court at page 643 said:

"Plaintiff makes no effort to demonstrate in what respects, if any, his arrest by defendant's deputy, Noah Richmond, was unlawful. As hereinbefore indicated the arrest was made with a warrant, which, as far as anyone contends, was duly and regularly issued by a duly elected, qualified and acting justice of the peace. This being true, said deputy's motive in arresting plaintiff, even if there had been any evidence tending to show said officer had one, other than that of doing his official duty, was immaterial. See 4 Am.Jur., Arrest, sec. 122, Annotations 21 A.L.R.2d 643, 649; 35 C.J.S. False Imprisonment § 27; Restatement of the Law, Torts, sec. 122. * * *"

In the instant case it is conceded that after plaintiff told the assistant county attorney that his signed confession of having committed a felony was true, a criminal complaint was filed and a warrant was issued and his arrest was made pursuant to that warrant, and as was said in Ames v. Strain, supra, as far as anyone contends that warrant was duly and regularly issued. Furthermore, plaintiff has made no effort to demonstrate or show in what respect, if any, his arrest and detention by a deputy sheriff was unlawful.

■■ We draw particular attention to the fact that plaintiff's cause of action herein was for damages for false arrest and false imprisonment, notwithstanding his apparent allegations of malicious prosecution. Plaintiff's case was tried and is argued herein upon that issue. No question of probable cause such as would arise in a malicious prosecution action is involved here. But even if the issue of probable cause in a malicious prosecution action had been present, the fact that upon preliminary hearing plaintiff was bound over for trial in the district court showed probable cause, and this court in Ames v. Strain, supra, so held. Therein it was said:

" * * * However, it is unnecessary to dwell on the evidence in this connection, because of the undisputed proof that, at plaintiff's preliminary hearing before the justice of the peace, he was bound over for trial in the district court on the burglary charges. This was prima facie evidence that plaintiff's arrest was with probable cause and without malice. See Champlin Refining Co. v. LeForce, 176 Okl. 48, 54 P.2d 190, 194; Brown v. Meier & Frank Co., 160 Or. 608, 86 P.2d 79; Mudge v. State, Ct.Cl., 45 N.Y.S.2d 896; Schultz v. Greenwood Cemetery, 190 N.Y. 276, 83 N.E. 41. There was nothing in the present case sufficient to refute this."

Thus it will be readily seen that under the facts and circumstances of the instant case and under the rule applied in Ames v. Strain, supra, the plaintiff failed to prove prima facie that he had been falsely arrested and falsely imprisoned, and we are of the opinion and hold that the court properly sustained defendants' demurrers to the evidence and dismissed the case. Its ruling and judgment is therefore affirmed.

DAVISON, C. J., and BLACKBIRD, JACKSON, and BERRY, JJ., concur.

WILLIAMS, V. C. J., and WELCH and IRWIN, JJ., Dissent.

WELCH, Justice (dissenting).

The rule is well settled that a demurrer to plaintiff's evidence admits every fact which such evidence tends in the slightest degree to prove, with all evidence favor-

able to defendant, the demurrant, eliminated from consideration, or considered as withdrawn for the purpose of passing upon such demurrer.

That rule has been stated and applied in many cases. I refer specifically to Buellesfeld v. Jones, 187 Okl. 596, 105 P.2d 242; Davis v. Curry, 192 Okl. 32, 133 P.2d 186, and Duck v. Selected Investment Corporation, 196 Okl. 547, 167 P.2d 54.

Application of the rule of those decisions to this case demonstrate, as I view it, that the trial court in this case erred in sustaining the demurrer to plaintiff's evidence and that reversal is required here as in the three cited cases.

I am authorized to say that IRWIN, J., concurs in these dissenting views.